<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH WEENING,<br><br>                    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Civil Action No. 14-4058 (JLL)<br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Elizabeth Weening ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") Elias Feuer, upholding the final decision of the Commissioner denying Plaintiff's application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is **affirmed**.

**I.    BACKGROUND**

    A.    <u>Procedural History</u>

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act on September 26, 2011. (R. at 144.) The application was denied on December 13, 2011. (R. at 12.) Plaintiff filed a request for reconsideration, seeking benefits for a period from August 1, 2004 through December 31, 2009. (R. at 14.) Her request for reconsideration was denied on April 17, 2012, and subsequently, a request for hearing was filed on April 19, 2012.

(R. at 12). A hearing was held before ALJ Elias Feuer on August 8, 2012. On May 8, 2013, ALJ Feuer issued a decision finding that Plaintiff was not disabled during the relevant time period. (R. at 9). Plaintiff requested review of the ALJ's decision by the Appeals Council. On May 14, 2013, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. (R. at 1). Plaintiff then commenced the instant action pursuant to 42 U.S.C. § 405(g).

    B.    Factual History

        1. Plaintiff's Testimony

At the time of her hearing, Plaintiff was forty-four years old. (R. at 28.) She described employment in various clerical positions from 1991 until 2004. (R. at 156-61, 177.) Her clerical positions involved payroll duties, preparing reports, building a new database, and data entry. (R. at 29-30.) She has an associate's degree from the Fashion Institute of Technology and has completed some coursework at Rutgers University. (R. at 28.) She has one son, who she gave birth to on November 24, 2004. She stopped working about two months prior to delivery and did not return to work or seek employment after giving birth. (R. at 31.) She remained home with her son to raise him full-time and to take care of the household. (R. at 33-34.)

Plaintiff alleges experiencing "very extreme muscle spasms." (Pl. Br. at 7.) She states that these spasms are triggered by her menstrual cycle, exercise, and continuous motion. (Pl. Br. at 7-8.) She was prescribed Xanax to see if it alleviated her abdominal or muscular symptoms, but it did not provide relief. She also alleges that what appeared to be a nodule on her thyroid was actually a muscle spasm. (R. at 43.) She stated that Dr. Gan witnessed her muscle spasms, though none of his records indicate this. (Pl. Br. at 8.) Plaintiff describes feeling badly two weeks a month. She also reports that every third month, she feels badly for an entire month. (R. at 47.)

Plaintiff testified that she limits taking pain medication and her prescribed muscle relaxant because she is concerned about liver and kidney damage. (Pl. Br. at 9.) She also indicated that she has had problems with muscle cramps triggered by exercise since high school and that she continued to exercise until the birth of her son. (R. at 39.) She further stated that she can sit for two hours before needing to shift her weight. (R. at 50.) On the functional report she filled out as part of her disability application, she reported that she takes her son to and from school, cleans the house, cooks, shops, does the laundry, cares for the dog, and attends to her personal care. (R. at 170-171.) Plaintiff testified that she has not been seen or treated by a mental health professional during the relevant time period. (R. at 37-38.).

    2. <u>Relevant Medical Evidence</u>

Between October 2001 and March 2005, Plaintiff visited Dr. Douglas Krohn with complaints including sore throat, diarrhea, vomiting, itching, dry hacking cough, low-grade fever, night sweats, achy neck and shoulders, PMS and spotting, lethargy, tiredness, and stress. (R. at 249-255.) In 2002, after a car accident, Plaintiff complained of mid-back discomfort, numbness and tingling in her left arm, uncomfortable neck and shoulders, anxiety, and hives (R. at 257.) There is no information in the record showing any complaints about muscle spasms or cramps during the period of time Dr. Krohn was Plaintiff's treating physician. (R. 249-268.)

On December 14, 2006, after Plaintiff complained of abdominal pain, she underwent a colonoscopy. The colonoscopy indicated a tortuous colon consistent with irritable bowel syndrome. (R. at 312-313.) On February 7, 2007, Plaintiff visited Family Care complaining again of abdominal pain. During a follow-up, Dr. Frank suggested a laparoscopy, which was normal. In July of 2007, she was prescribed Effexor to improve her abdominal pain and to resolve her complaints of fatigue. (R. at 309.) On March 4, 2008, Plaintiff visited Family Care for a check-

up and indicated that she felt "swell." (R. at 306.) On June 5, 2008, she stated that she was "doing well." (R. at 306.) She also complained of gas during her menstrual cycle. (R. at 306.) In November 2008, she discontinued Effexor. (R. at 306.) On December 8, 2008, she complained of abdominal pain that seemed to be related to her pregnancy. (R. at 306.)

After reportedly experiencing heat intolerance and irregular heartbeat, Plaintiff visited Dr. Saunders, a radiologist, on November 24, 2009. (R. at 473). His records indicate that a nodule was seen on June 17, 2009. (R. at 473.) He also states that she was experiencing "increased fatigue and . . . diarrhea" but not tremors. (R. at 473.) She had another thyroid ultrasound on November 14, 2009, which indicated no evidence of a nodule. (R. at 472.)

    3. <u>Medical Evidence after December 31, 2009</u>

Dr. Michael Merkin's report of January 12, 2010 indicates that Plaintiff reported a history of "various muscle spasms" and "issues with her abdomen and pelvis." (R. at 465.) He indicates that she has "no history of...seizure." (R. at 465.) He also performed a neurologic examination, which he described as "normal." (R. at 466.) Dr. Richard Gan saw Plaintiff on May 11, 2010, and indicated that Plaintiff reported that she has "muscle spasms pretty much from head to toe." (R. at 269.) Dr. Gan indicated that the symptoms Plaintiff reported seemed like a "possible variant of [paroxysmal dystonia dyskinesia]" and that he "would consider dystonia in the differential." (R. at 272, 296.) His examination indicated no tremors or other neurological abnormalities. (R. at 273.) Plaintiff's nerve conduction velocity tests were normal, as was an EMG. (R. at 296-298.)

Dr. Margery Mark, a neurologist, saw Plaintiff for a consultation on May 11, 2010. Like Dr. Merkin and Dr. Gan, Dr. Mark indicated that Plaintiff had reported a history of "muscle spasms pretty much from head to toe." (R. at 274.) She also indicates that Plaintiff can "predict

4

and exactly map out the sequence of these spasms." (R. at 274.) Dr. Mark also stated that Plaintiff's mental status was "within normal limits" and that "there was no apparent tremor, dystonia, chorea, or myoclonus." (R. at 275.) She agreed with Dr. Gan that her "story with waxing and waning symptomatology and individual spasms lasting less than a minute…is most consistent with a paroxysmal dyskinesia." (R. at 275.)

Records from Branchburg Center for Women spanning from January 8, 2010 to November 14, 2011 reveal that Plaintiff was treated for abnormally heavy menstrual periods, recurrent vaginal discharge, yeast infections, dyspareunia, bacterial vaginitis, and vaginismus. (R. at 390, 392, 398, 404.) On March 28, 2011, Plaintiff was diagnosed with and treated for a Bartholin's gland cyst. (R. at 393-394.) In February 2012, Dr. Dhiren Dave saw Plaintiff for abdominal pain. He found that she had microscopic hematuria. A follow-up MRI indicated a simple cyst without septation or enhancement. A follow-up visit showed that "the hematuria is better" and "there is no abdominal pain." (R. at 438.) Dr. Dave indicated that Plaintiff reported feeling "satisfied with life" and "not depressed." He also indicated that Plaintiff provided him with a history of "tremors." (R. 435.)

On May 23, 2012, Dr. Hersch indicated that she saw Plaintiff for "severe labor pains during intercourse" and indicated pelvic tenderness. (R. at 493-494.) Plaintiff provided a history to Dr. Judith Hersch on September 19, 2012 including "muscle spasms over her whole body." (R. at 491.)

Plaintiff alleges that she "complained of fatigue, malaise, depression, and nausea." (Pl. Br. at 5.) Though several doctors that Plaintiff visited after 2010 indicate that Plaintiff self-reported a history of muscle spasms and cramps, none of Plaintiffs medical records prior to 2010

indicate that any doctor observed muscle spasms or cramps, or even that Plaintiff ever complained about muscle spasms or cramps. (R. at 249-303, 306-461, 464-494.)

      4. Vocational Expert Testimony

The ALJ asked vocational expert Jackie Wilson to consider whether a hypothetical "individual of the same age, education, and work experience as the claimant . . . [who] could perform work at the light exertional level without any limitations" could perform Plaintiff's past relevant work. (R. at 57.) Ms. Wilson testified that such an individual could perform all of Plaintiff's past work. The ALJ posed another hypothetical in which the same individual's work performance was reduced to "sedentary without any limitations."(R. at 58.) Ms. Wilson testified that such an individual could still perform Plaintiff's previous occupations as a "payroll clerk, data entry clerk, and benefits clerk." (R. at 58.)

      5. State Agency Medical Expert Opinion

On November 16, 2011, Dr. Jyothsna Shastry reviewed Plaintiff's medical records and determined that she was not disabled under the Act because there was insufficient evidence. (R. at 73-74.) On April 3, 2012, Dr. Robert Walsh affirmed Dr. Shastry's opinion upon reconsideration, stating that Plaintiff's medical records did not establish either dystonia or a psychological impairment prior to December 31, 2009. (R. at 81.) On December 12, 2012, Dr. Sharon Flaherty opined that Plaintiff did not have any medically-determinable mental impairments. (R. at 74.) In April 2012, Dr. Michael D'Adamo reviewed Dr. Flaherty's psychological findings and affirmed them. (R. at 82.)

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262

(3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. V. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (citing Hunter Douglas, Inc. v. Nat'l Labor Relations Bd., 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court

"must 'take into account whatever in the record fairly detracts from its weight.'" Id. (citing Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected, the Court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III.   APPLICABLE LAW

#### A.   The Five-Step Process for Evaluating Whether a Claimant Has a Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if she meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). A person is disabled only if her physical or mental impairment(s) are "of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether the claimant is disabled, the Commissioner performs a five-step sequential evaluation. 20 C.F.R. § 416.1520. The claimant bears the burden of establishing the

first two requirements. The claimant must establish that she (1) has not engaged in "substantial gainful activity" and (2) is afflicted with "a severe medically determinable physical or mental impairment." 20 C.F.R. §404.1520(a)-(c). An impairment is severe if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §404.1520(a). If a claimant fails to demonstrate either of these two requirements, DIBs are denied and the inquiry ends. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

If the claimant successfully proves the first two requirements, the inquiry proceeds to step three which requires the claimant to demonstrate that her impairment meets or medically equals one of the impairments listed in 20 C.F.R. Part 404 Appendix 1. If the claimant demonstrates that her impairment meets or equals one of the listed impairments, she is presumed to be disabled and therefore, automatically entitled to DIBs. <u>Id.</u> If she cannot make the required demonstration, further examination is required. The fourth step of the analysis asks whether the claimant's residual functional capacity ("RFC") permits her to resume his previous employment. 20 C.F.R. §416.920(e). If a claimant is able to return to her previous employment, she is not disabled within the meaning of the Act and is not entitled to DIBs. <u>Id.</u> If the claimant is unable to return to his previous employment, the analysis proceeds to step five. At this step, the burden shifts to the Commissioner to demonstrate that the claimant can perform a job that exists in the national economy based on the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 416.920(g). If the Commissioner cannot satisfy this burden, the claimant is entitled to DIBs. <u>Yuckert</u>, 482 U.S. at 146 n.5.

  B. <u>The Requirement of Objective Evidence</u>

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless she furnishes such medical and

9

other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A). Credibility is a significant factor. When examining the record: "The adjudicator must evaluate the intensity, persistence, and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities." SSR 96-7p, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms

> will be determined to diminish [her] capacity for basic work activities…to the extent that [her] alleged functional limitations and restrictions due to symptoms…can reasonably be accepted as consistent with the objective medical evidence and other evidence.

Id. A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b). See also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

**IV.   DISCUSSION**

Plaintiff argues that the ALJ erred at step two by improperly finding that she did not have any severe impairments between August 1, 2004 and December 31, 2009 and at step three by finding that she had no conditions that met or equaled a listed impairment during the relevant period. (Pl. Br. at 12.) Plaintiff asserts that she has severe impairments including paroxysmal dyskinesia and depression in addition to PMS/menstrual cramps. She argues that the ALJ failed to consider medical evidence indicating these additional medical problems. (Pl. Br. at 12.) Further, Plaintiff asserts that these impairments are severe, requiring the ALJ to proceed to step three of the disability analysis and find that her paroxysmal dyskinesia most closely resembles epilepsy, a listed impairment. (Pl. Br. at 18.)

A. <u>Substantial evidence supports the ALJ's finding that Plaintiff's PMS/menstrual cramps were not severe enough to significantly limit her ability to perform basic work-related activities.</u>

Plaintiff states that the ALJ erred in finding that her PMS/menstrual cramps were not severe. (Pl. Br. at 12.) However, she does not make any argument suggesting that this impairment was severe. An impairment is severe if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are "the abilities and aptitudes necessary for performing most jobs," including physical functions, capacities for seeing, hearing, speaking, and following instructions, use of judgment, interacting appropriately with co-workers, and dealing with change. 20 C.F.R. § 404.1521(b). The ALJ found that there was evidence of a "PMS problem" including "difficulty focusing, lethargy, tiredness, feeling stressed out . . . nausea, vomiting, and sometimes diarrhea." (R. at 17.) Based on her testimony and its medical support, the ALJ determined that because her symptoms are episodic and intermittent and because there was nothing in the record suggesting that the condition was

11

"consistently debilitating" or that it "interfered with her level of activity" during the relevant period, Plaintiff did not establish that her condition was severe. (R. at 19.)

There is no indication in Plaintiff's medical records that PMS affected her ability to perform any work activities. Plaintiff indicated that she has been experiencing menstrual cramps since she began menstruating when she was 14 (R. at 39). Her medical records indicate that she experienced PMS symptoms at 14, during high school, and while she was working. (R. at 249-268, 39, 413, 301). Despite her history of menstrual cramps, she worked regularly from 1991 until 2004 (R. at 156-61). The Plaintiff has the burden of proving a severe impairment, and she failed to do so. The Court finds that the ALJ's determination that Plaintiff's PMS/menstrual cramps were not a severe impairment during the relevant time period was based on substantial evidence in the record.

B. <u>Substantial evidence supports the ALJ's finding that Plaintiff did not have a medically-determinable mental health impairment.</u>

Plaintiff claims that the ALJ failed to discuss, and made no finding concerning, Plaintiff's depression. (Pl. Br. 12.) However, the ALJ specifically addresses Plaintiff's alleged depression, stating in his decision that he "do[es] not find that there was any evidence supporting a finding of a medically-determinable mental health impairment." (R. at 14.) Based upon a review of Plaintiff's medical records and the opinions of state agency psychologists, the ALJ determined that there was no evidence that Plaintiff had ever been treated for, or even diagnosed with, depression. In his review of Plaintiff's medical records, he found that the only reference to a mental health issue during the relevant period was a prescription for Effexor, which Plaintiff indicated was prescribed for abdominal pain and not depression. (R. at 14.)

Plaintiff refers to her "long-standing history of…depression" but only cites a single instance in her medical record that even suggests depression. Plaintiff relies on the record of a

doctors' visit in November 2008 that provides a "problem list" including depression. This list, however, is not a list of diagnoses, but a list provided by Plaintiff regarding her own medical history. (R. at 323.) There is no evidence or diagnosis of depression elsewhere in Plaintiff's treatment notes. (R. at 14.) Plaintiff also testified that she has not been treated by a mental health professional since prior to 2004. (R. at 38.) Further, on multiple visits to her primary-care physician, Plaintiff reported that she was "doing very well," that she felt "swell" and "very good." (R. at 306-307.) Her treatment records state that she is "not depressed." (R. at 435.)

Dr. Sharon Flaherty, a state agency psychologist, reviewed Plaintiff's medical records and claim and concluded that Plaintiff did not have any medically-determinable mental impairment during the relevant period. (R. at 74.) Her opinion was reviewed and supported by Dr. Michael D'Adamo. (R. at 82.) The ALJ stated that he fully credited the state agency's expert opinions given the lack of evidence of any mental health impairment in Plaintiff's medical records. (R. at 14.) Due to the experts' opinions and the lack of objective medical evidence, it was appropriate for the ALJ to find that Plaintiff did not have a medically-determinable mental health impairment. Therefore, this Court concludes that there is substantial evidence in the record supporting the ALJ's conclusion.

C. <u>Substantial evidence supports the ALJ's finding that Plaintiff's paroxysmal dyskinesia was not severe and did not constitute a disability.</u>

Plaintiff claims that the ALJ failed to discuss, and made no finding concerning, Plaintiff's paroxysmal dyskinesia. (Pl. Br. 12.) However, the ALJ specifically addresses Plaintiff's dyskinesia throughout his decision. (R. at 16-19.) He indicated that "the relevant evidence in question was limited at best" and that "the record did not support that her condition was…severe during the relevant period." (R. at 19.)

Though Plaintiff was diagnosed with paroxysmal dyskinesia in May of 2010, a review of Plaintiff's medical records shows that there is no evidence that she experienced her alleged symptoms during the relevant period. Plaintiff's first complaint in the record referencing muscle spasms appears to have been on January 8, 2010, a date outside the relevant time period of August 1, 2004 to December 31, 2009. (R. at 399.) She reported to Dr. Marcel Favetta, her gynecologist, that she felt that muscle spasms were the cause of her abdominal pain. (R. 399.) There is no information in his treatment records suggesting that Dr. Favetta observed any muscle spasms, only that she reported them. (R. at 389-434.)

Plaintiff attempts to show that she experienced muscle spasms and cramps during the relevant period by citing Dr. Krohn, Dr. Gan, Dr. Mark, and Dr. Merkin's notes and reports. (Pl. Br. at 4-7, 14-16.) However, the records she cites refer to self-reported histories, not objective medical evidence. The notes from Dr. Krohn, who was her primary care physician from 2001 to 2005, indicate numerous office visits and a variety of complaints, but none about muscle spasms. Dr. Gan's notes indicate that Plaintiff complained of muscle spasms, but nerve conduction velocity tests, MRIs, CT scans, blood work and EMGs were all normal, providing no evidence of paroxysmal dyskinesia. (R. at 295.) Dr. Gan's notes on March 30, 2010 indicate that he "would consider dystonia in the differential," suggesting that dystonia should be considered in trying to diagnose Plaintiff. His notes do not indicate that he observed any muscle spasms. (R. at 295-296.) On April 17, 2010, Dr. Gan indicated that it was "possible" that a dystonic syndrome was causing Plaintiff's complaints. (R. at 297.) Dr. Mark's report states that her examination of Plaintiff was normal. She agreed with Dr. Gan that Plaintiff's self-reported systems were consistent with paroxysmal dyskinesia, but did not provide any objective medical evidence supporting the existence of the symptoms that Plaintiff alleges. (R. at 274.) Dr. Merkin's report,

too, indicates that Plaintiff provided a history of muscle spasms for the past ten years, but offers no objective evidence supporting this history. (R. at 465.)

The ALJ determined that evidence regarding paroxysmal dyskinesia "was sparse and certainly did not suggest an overwhelming disabling issue." (R. at 17.) The available records did not "establish a pattern of debilitating complaints." (R. at 19). Substantial evidence supports this finding; there is no information in the record supporting Plaintiff's claim that she experienced muscle spasms during the relevant time period aside from her own statements. Without objective medical evidence, complaints alone are insufficient to establish a severe impairment. 20 C.F.R. § 404.1508. The ALJ found that, although Plaintiff has been diagnosed with paroxysmal dyskinesia, her "statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely credible." (R. at 19.) Her symptoms were not severe enough to warrant Botox injections because they only afflict her every few months. (R. at 299.) She testified that Tegretol and Flexeril helped reduce her pain. (R. at 46, 49.) She also stated that, since his birth, she has been her son's primary caretaker and that she does not require assistance in caring for him. (R. at 33.) In addition to caring for her son, she is responsible for cooking, laundry, cleaning, shopping, taking care of the dog, and performing other household chores. (R. at 33-34, 170-71, 269.) The ALJ found that although she is not paid for these responsibilities, "being a homemaker is hard, physical, exertional work, [and] it is an every day job that does not accommodate or allow for days off." (R. at 19). This supports the ALJ's conclusion that Plaintiff's alleged symptoms do not constitute a disability. Therefore, the Court finds that there was substantial evidence in the record to support the ALJ's determination that Plaintiff's paroxysmal dyskinesia was not severe and did not constitute a disability during the relevant period of time.

D. <u>The ALJ should have used a medical advisor to infer the date of onset for Plaintiff's paroxysmal dyskinesia.</u>

Plaintiff argues that because "it is sometimes impossible to obtain medical evidence" that establishes a precise onset date, the ALJ should have used a medical advisor to infer the date of onset for Plaintiff's paroxysmal dyskinesia. (Pl. Br. at 17.) This is unnecessary. The ALJ found based on substantial evidence that Plaintiff's paroxysmal dyskinesia was not severe, so her date of onset does not matter. The Court therefore finds that the ALJ's decision not to use a medical adviser to infer the date of onset was supported by substantial evidence in the record.

E. <u>Because none of Plaintiff's impairments were severe, the ALJ correctly did not proceed to step three of the disability analysis.</u>

The ALJ only proceeds to step three if the claimant has a severe medically-determinable impairment or combination of impairments. Because there was substantial evidence to support the ALJ's determination that none of Plaintiff's impairments constituted a severe medically-determinable impairment, the Court finds the ALJ properly did not proceed to step three. For this reason, this Court declines to consider whether paroxysmal dyskinesia medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Accordingly, this Court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. As such, the final decision of the Commissioner is affirmed.

V. **CONCLUSION**

For the foregoing reasons, the decisions of the Commissioner and the ALJ are **affirmed**. An appropriate order follows this Opinion.

DATED: 8th of June, 2015.

                                         s/ Jose L. Linares_____
                                         JOSE L. LINARES
                                         U.S. DISTRICT JUDGE